# IN THE COURT OF APPEALS OF IOWA

No. 22-1985
Filed March 29, 2023

**IN THE INTEREST OF R.S. and R.W.,**
**Minor Children,**

**E.S., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Johnson County, Joan M. Black, District Associate Judge.


    A mother appeals the termination of her parental rights.  **AFFIRMED.**


    Shawn C. McCullough of Powell and McCullough, PLC, Coralville, for appellant mother.

    Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

    David R. Fiester, Cedar Rapids, attorney and guardian ad litem for minor children.


    Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

A mother who was just nine days sober from methamphetamine at the time of the termination hearing appeals the termination of her parental rights to her two children—born in 2016 and 2019—under Iowa Code section 232.116(1)(f) and (h) (2022).[1]  She argues (1) the juvenile court erred in denying her request for more time to work toward reunification and (2) termination is contrary to the children's best interests given the closeness of the parent-child bonds.  We review her claims de novo.  *See In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).

In July 2021, the Iowa Department of Health and Human Services received a report that the mother was using and selling methamphetamine in the home she shared with her two sons.  The mother tested positive for methamphetamine and amphetamines, but she denied using drugs.  Family preservation services were initiated, but the mother did not participate.  As a result, the State obtained an order for temporary removal.  The children were placed with their maternal grandmother, where they have remained.  In October, the children were adjudicated as in need of assistance under Iowa Code section 232.2(6)(c)(2) (2021).

Fast-forward to the termination hearing more than one year later, in November 2022.  Of the fifty-two times the department asked the mother to submit to drug testing, the mother did not comply with any of them.  She explained in her testimony that she did not comply because the tests would be positive—"I guess in my head it was, you know, better no test than a positive one."  She admitted to

---

[1] The parental rights of both children's fathers were also terminated.  Only R.S.'s father appealed.  The supreme court dismissed his appeal for failure to comply with appellate rules.

using methamphetamine throughout the proceedings, which was confirmed by her indicators of use—"sores on her face, scratching at her skin, paranoia, irritability, and confusion."

The mother did undergo a substance-abuse evaluation in March 2022, at which she tested positive for methamphetamine and amphetamines. She did not follow through with recommended intensive outpatient treatment. In candid testimony, the mother admitted that she is "an addict," noting her drug of choice is methamphetamine, which she began using six years earlier. The mother identified the past year as the worst she had ever experienced with her methamphetamine-use. She testified that she last used methamphetamine just nine days before the termination hearing, though she continued to use marijuana "[h]ere and there" to help with her mental health.

Despite acknowledging that her mental health was a "key component" of why she was a drug user, the mother dragged her feet on completing a recommended mental-health evaluation. She finally completed the evaluation in July 2022, which recommended extended inpatient treatment. The mother avoided that recommendation, testifying that she wanted to "heal on [her] terms," though she did start attending therapy "off and on" in August. But in her termination report, the social worker observed the mother has "taken a back slide during the past couple months," with her "mental health . . . worse than it has ever been."

When questioned at the termination hearing whether she was "asking the [c]ourt to return the kids to [her] today," the mother responded: "I don't in any way think that I can take them back today. I think that I have a lot of healing to do myself." So she requested another six months to work toward reunification, during

which she said that she would continue therapy, begin substance-abuse treatment, "stay clean," and "try to mend relationships with [her] family." Yet the mother acknowledged that she had no relapse-prevention plan, and she could still get methamphetamine from her local contacts.

With this backdrop in mind, we turn to the mother's claims involving the second and third steps in our termination framework. *See* Iowa Code § 232.116(2), (3) (2022); *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). On the best-interests question, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

The mother simply argues termination is not in the children's best interests because, before removal, she "provided significant care to the children." But the testimony of the mother's great aunt discloses that care was questionable at best, identifying domestic violence and the mother's unstable mental health as concerns. Since removal, the mother has done nothing to ensure the children's safety, foster their nurturing and growth, or tend to their needs. Instead, those duties have been shouldered by the maternal grandmother. In any event, "to some extent, the [best-interests] determination must be made upon past conduct," and "[w]hile we hope the mother prevails in her battle with substance abuse, we cannot deprive [children] of permanency after the State has proved a ground for termination upon such sentiments." *In re C.O.*, No. 21-1316, 2022 WL 470852, at *2 (Iowa Ct. App. Feb. 16, 2022) (first alteration in original) (citation and internal quotation marks omitted). Given the mother's unwillingness to meaningfully

address her substance-abuse and mental-health issues until the eve of termination, we agree with the juvenile court that termination is in the children's best interests. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

In bare-bones fashion, the mother also argues "[i]t would be detrimental to the child[ren] to terminate the relationship," which implicates one of the permissive exceptions in the third step of the termination framework. Specifically, Iowa Code section 232.116(3)(c) allows the juvenile court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." On this question, we ask "whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the children's] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). On our de novo review, we find that any minimal disadvantage to the children from termination does not overcome the mother's parenting deficiencies. As a result, the exception does not apply.

Lastly, the mother asks for more time to work toward reunification. Additional time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). First, the mother claims that "[t]hroughout the case, [she] demonstrated that she was working toward maintain[ing] sobriety, finding and maintain[ing] employment, [and] following the recommendations of the [d]epartment." Trouble is, the record shows the mother did not do any of these things. The mother goes on to argue that, despite the concerns for her sobriety and possibility of relapse, she "provided a detailed plan that indicated her

intentions and appointments that she had made to address these concerns." But the things the mother said she *would* do are all things she failed to do up to this point. The juvenile court did not buy it, and neither do we. The mother was already granted a seven-month deferral of permanency as to the younger child, which she squandered. Long story short, "[g]iven the mother's long history of substance abuse and unquestionably continuous use throughout these proceedings, she would need to demonstrate maintenance of sobriety for a long period of time before the child[ren] could be placed in her care, certainly longer than six months." *In re S.J.*, No. 21-0238, 2021 WL 1904646, at *2 (Iowa Ct. App. May 12, 2021). We agree with the juvenile court that an extension is not warranted in this case.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**